## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| QUINCY GREEN,<br><br>   Plaintiff,<br><br>v.<br><br>ACCUSOURCE HR, INC.<br><br>   Defendant. | **Case No.:**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Quincy Green ("Plaintiff" or "Mr. Green") by and through his counsel brings the following Complaint against AccuSource HR, Inc. ("Defendant" or "AccuSourceHR") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that Defendant published to Plaintiff's potential employer, which included at least four criminal records that did not belong to Plaintiff.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database

1

and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3.     Defendant falsely reported to Plaintiff's employer that Plaintiff was convicted of four criminal records that ***do not belong to Plaintiff***, including: a drug-related ***felony*** for possession of LSD, and a misdemeanor receiving goods represented as stolen; and two misdemeanors for driving under suspension. Defendant's reporting is grossly inaccurate and untrue.

4.     Plaintiff has never been convicted of a felony.

5.     Plaintiff's employer suspended Plaintiff from employment after receiving an employment background check report from Defendant, which inaccurately included misdemeanor and felony convictions that belonged to another consumer.

6.     Defendant's inaccurate reporting could have easily been avoided had Defendant reviewed the widely available underlying public court records from Orangeburg County, South Carolina and Richland County, South Carolina regarding the felony and misdemeanor convictions prior to publishing Plaintiff's report to his employer.

7.     Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that the criminal records belong to a different consumer who is wholly distinguishable from Plaintiff by their middle name and date of birth and even reside in a different part of the state from Plaintiff.

8.     Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9.     Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers interested in continued employment by prejudicing their employers with inaccurate criminal record information.

10.     Defendant's inaccurate report cost Plaintiff a good paying job and job security.

11.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12.     As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA, and for failing to conduct a reasonable reinvestigation to determine whether the information Plaintiff disputed – **the criminal records that do not belong to him** – was inaccurate and delete the disputed

information from the subject employment report, in violation of the FCRA, 15 U.S.C. § 1681i.

## PARTIES

13.     Quincy Green ("Plaintiff" or "Mr. Green") is a natural person residing in Myrtle Beach, South Carolina, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14.     Defendant AccuSource HR, Inc., ("Defendant" or "AccuSourceHR") is an Arizona corporation doing business throughout the United States, including the State of South Carolina and in this District, and has a principal place of business located at 11811 N Tatum Blvd. UNIT 3090, Phoenix, AZ 85028. AccuSource HR can be served through its registered agent Incorp Services, Inc. at 8825 N. 23rd Avenue, Suite 100, Phoenix, AZ 85021.

15.     Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

16.     Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

19.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20.     While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

21.     Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22.    Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

23.    Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

24.    The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

25.    In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

26.    The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27.    Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28.    Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

29.    Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data.  As a result of the increasing availability of this data, there has been a boom in the background check industry.

30.    As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening.  CFPB Report at 4.

31.    The criminal background check industry takes in revenues in excess of three billion dollars, annually.[2]

32.    Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data.  The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

33.    Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").
[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

34.    Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

35.    Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

36.    Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

37.    Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

38.    Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting misdemeanor and felony convictions that belong to an unrelated consumer who has a different middle name and date of birth than Plaintiff.

39.    As a provider of background check reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening

Association ("PBSA").  PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS
### Plaintiff Applies for a Job with Ocean Lakes Family Campground

40.    On or about April 25, 2023, Plaintiff applied for full-time employment as a Security Guard with Ocean Lakes Family Campground ("Ocean Lakes"), located in Myrtle Beach, South Carolina.

41.    Upon applying to Ocean Lakes, Plaintiff successfully completed an interview and passed a drug test.

42.    Soon after, Ocean Lakes extended a job offer to Plaintiff for the position to which he applied. The job offer was conditioned upon Plaintiff passing a background check ("employment report.").

43.    On or about May 6, 2023, Plaintiff began working for Ocean Lakes while the background check was pending. He was making $14 per hour working the night shift, eight hours per day, Monday through Friday.

44.    Plaintiff loved working there, not only because it was good-paying, steady W-2 employment, but because it was a beautiful campgound on the beach, with recreational facilities and playgrounds, and his friends and family would visit him there.

### Defendant Published an Inaccurate Background Check Report to Ocean Lakes

45.    Ocean Lakes contracted with Defendant to conduct background checks, including criminal background checks, on its prospective and current employees.

46.    On or about May 2, 2023, Ocean Lakes ordered a criminal background check on Plaintiff from Defendant.

47.    On or about May 3, 2023, in accordance with its standard procedures, Defendant completed its employment-purposed consumer report ("employment report") about Plaintiff and sold the same to Ocean Lakes. Upon information and belief, the employment report was received by Ocean Lakes on or before May 26, 2023.

48.    Within that employment report, Defendant published inaccurate information about Plaintiff.

49.    Specifically, Defendant's employment report about Plaintiff included grossly inaccurate and stigmatizing misdemeanors and felony convictions from Orangeburg County, South Carolina and Richland County, South Carolina, which appeared in the employment report as follows:

[2017GS3805950] - [ORANGEBURG COUNTY (GENERAL SESSIONS) - ]

| File Date: | 11/16/2017 | Weight: | |
| Legal First Name: | QUINCY | Height: | |
| Legal Middle Name: | | Hair Color: | |
| Legal Last Name: | GREEN | Eye Color: | |
| Gender: | M | Disposition Date: | 03/20/2018 |
| DOB: | | Offense Date: | |
| SSN: | | Next Court Date: | |
| Ethnicity: | BLACK | Alias(es): | |
| Additional Notes: | | CASES FOUND: CASES NOT FOUND: | CASE STATUS: DISPOSED | |

**Charges**

| Charge: | DRUGS / MDP. NARCOTIC DRUGS IN SCH. I(B) & (C). LSD. AND SCHED. II - 1ST OFFENSE | Prison Time: | |
| | | Jail Time: | |
| | | Probation: | |
| Charge Level: | FELONY | Suspended: | |
| Disposition: | PLED GUILTY | Fines: | 283 |
| Disposition Date: | 03/20/2018 | Cost: | |
| | | Restitution: | |
| Other: | OTHER SENTENCE INFORMATION: (SCDC 5 YRS. CTS OF 30 DAYS.) | | |

[HS765721] - [ORANGEBURG COUNTY (CENTRAL TRAFFIC COURT) - ]

| File Date: | 04/14/2016 | Weight: | |
| Legal First Name: | QUINCY | Height: | |
| Legal Middle Name: | MAURICE | Hair Color: | |
| Legal Last Name: | GREEN | Eye Color: | |
| Gender: | M | Disposition Date: | 06/09/2016 |
| DOB: | | Offense Date: | |
| SSN: | | Next Court Date: | |
| Ethnicity: | BLACK | Alias(es): | |
| Additional Notes: | | CASES FOUND: CASES NOT FOUND: | CASE STATUS: DISPOSED | |

**ges**

| Charge: | DUS / DRIVING UNDER SUSPENSION. LICENSE NOT SUSPENDED FOR DUI - 1ST OFFENSE | Prison Time: | |
| | | Jail Time: | |
| | | Probation: | |
| Charge Level: | MISDEMEANOR | Suspended: | |
| Disposition: | PLED GUILTY | Fines: | 672 |
| Disposition Date: | 06/09/2016 | Cost: | |
| | | Restitution: | |

Verified Date: 05/24/2023 08:54:56

## [20220610265034] - [RICHLAND COUNTY (COLUMBIA MUNICIPAL COURT) - ]

| | | | |
|---|---|---|---|
| File Date: | 04/23/2022 | Weight: | |
| Legal First Name: | QUINCY | Height: | |
| Legal Middle Name: | MAURICE | Hair Color: | |
| Legal Last Name: | GREEN | Eye Color: | |
| Gender: | M | Disposition Date: | 12/07/2022 |
| DOB: | | Offense Date: | |
| SSN: | | Next Court Date: | |
| Ethnicity: | BLACK | Alias(es): | |
| Additional Notes: | CASES FOUND: 2019A4010201506 CASES NOT FOUND: | CASE STATUS: TIME PAYMENT | | |

### Charges

| | | | |
|---|---|---|---|
| Charge: | DUS / DRIVING UNDER SUSPENSION. LICENSE NOT SUSPENDED FOR DUI - 1ST OFFENSE | Prison Time: | |
| | | Jail Time: | |
| | | Probation: | |
| Charge Level: | MISDEMEANOR | Suspended: | |
| Disposition: | GUILTY BENCH TRIAL | Fines: | 666 |
| Disposition Date: | 12/07/2022 | Cost: | |
| | | Restitution: | |
| Other: | OTHER SENTENCE INFORMATION: (FINE | (OR) FINE OR JAIL TIME) | | |

## [20220610265049] - [RICHLAND COUNTY (COLUMBIA MUNICIPAL COURT) - ]

| | | | |
|---|---|---|---|
| File Date: | 04/23/2022 | Weight: | |
| Legal First Name: | QUINCY | Height: | |
| Legal Middle Name: | MAURICE | Hair Color: | |
| Legal Last Name: | GREEN | Eye Color: | |
| Gender: | M | Disposition Date: | 12/07/2022 |
| DOB: | | Offense Date: | |
| SSN: | | Next Court Date: | |
| Ethnicity: | BLACK | Alias(es): | |
| Additional Notes: | CASES FOUND: 2019A4010201506 CASES NOT FOUND: | CASE STATUS: TIME PAYMEN | | |

### Charges

| | | | |
|---|---|---|---|
| Charge: | RSG / RECEIVING GOODS. REPRESENTED AS STOLEN. VALUE $2,000 OR LESS | Prison Time: | |
| | | Jail Time: | |
| | | Probation: | |
| Charge Level: | MISDEMEANOR | Suspended: | |
| Disposition: | GUILTY BENCH TRIAL | Fines: | 2188 |
| Disposition Date: | 12/07/2022 | Cost: | |
| | | Restitution: | |

50.     The criminal records from Orangeburg County, South Carolina and Richland County, South Carolina reported by Defendant about Plaintiff to Ocean Lakes ***do not belong*** to Plaintiff.

51.     A cursory review of the widely available underlying public court records confirms that the records belong to an unrelated male, Quincy ***Maurice*** Green ("Convicted Felon Green").

52.     Had Defendant actually consulted or obtained the widely available underlying public court records regarding the four convictions from Orangeburg County, South Carolina and Richland County, South Carolina, it would have seen obvious discrepancies between Convicted Felon Green and Plaintiff.

53.     The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Convicted Felon Green include the following:

(a)     Plaintiff's legal name is "Quincy Rodriquev Green," and the criminal records belong to a "Quincy Maurice Green," which is both clearly indicated on the face of the employment report and in the widely available public records from Orangeburg County, South Carolina and Richland County, South Carolina;

(b)     Plaintiff's date of birth, which was provided to Defendant prior to publishing the subject employment report, is August 24, 1981, yet the underlying public court records indicate that Convicted Felon Green's date of birth is October 1, 1981.

(c)    Plaintiff has only ever resided in Myrtle Beach, South Carolina, which is confirmed and clearly indicated on the face of the subject employment report, yet the underlying public court records regarding the four criminal convictions indicate that Convicted Felon Green resided in Columbia, South Carolina at the time he committed the offenses; and,

(d)    Plaintiff's Social Security number, which was provided to Defendant is contained on the face of the subject employment report is entirely different than that of Convicted Felon Green.

54.    The sole reason the inaccurate criminal records were reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's employer.

55.    Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing criminal convictions belong to an unrelated individual with a different middle name than Plaintiff, a different date of birth, a different Social Security Number, and who resides in a different part of the state than Plaintiff.

56.    In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

### Ocean Lakes Suspended Plaintiff's Employment

57.     On or about May 26, 2023, Plaintiff's supervisor called Plaintiff and asked him to come to his office and that it was urgent.

58.     When Plaintiff arrived, Plaintiff's supervisor looked at Plaintiff and said, "Why did you lie to the hiring manager?" Plaintiff was completely baffled.

59.     Plaintiff's supervisor then handed Plaintiff a copy of the AccuSourceHR report and told him that they had only let Plaintiff start working because they thought his background check would pass, but with the felony drug charge on the AccuSourceHR report, they would not be able to keep Plaintiff employed there.

60.     Plaintiff reviewed the copy of the subject employment report and was shocked and humiliated upon reviewing and realizing that the serious criminal convictions of another, namely Convicted Felon Green, were published in the employment report Defendant sold about Plaintiff to Ocean Lakes. Plaintiff was completely confused about how someone else's convictions could show up on his background check.

61.     Plaintiff explained to his Ocean Lakes supervisor that Defendant's report was inaccurate, even pointing out the distinctions between Plaintiff's name and that of the other person that committed the crimes at issue. Plaintiff's employer reluctantly believed him since the middle name reported was different than Plaintiff's. Plaintiff's employer suspended Plaintiff's employment and withheld terminating Plaintiff to give Plaintiff time to secure a corrected report from Defendant. Ocean Lakes removed Plaintiff from the schedule of shifts.

62.     Plaintiff was very panicked, confused, and concerned about the impact of Convicted Felon Green's serious criminal convictions reported on the subject employment report – specifically, the impact of the same on his future.

63.     Specifically, Defendant matched Plaintiff and Convicted Felon Green and published the criminal records of Convicted Felon Green onto the employment report about Plaintiff and sold that report to Plaintiff's employer. This exculpatory public record information was widely available to Defendant prior to publishing Plaintiff's employment report to Ocean Lakes, but Defendant failed to perform even a cursory review of such information.

**Plaintiff Disputed the Misinformation in Defendant's Employment Report**

64.     On May 26, 2023, desperate to return to work for Ocean Lakes and riddled with worry over the far-reaching impacts of being confused with a convicted felon, Plaintiff disputed the inaccurate information with Defendant via email.

65.     Plaintiff identified himself and provided information to Defendant to support his dispute and sent them a copy of his driver's license.

66.     Plaintiff specifically disputed the criminal records of Convicted Felon Green.

67.     Plaintiff specifically stated that the criminal records of Convicted Felon Green do not belong to Plaintiff.

68.     Plaintiff specifically asked Defendant to investigate and delete Convicted Felon Green's criminal records from any employment report about Plaintiff.

16

**Defendant Failed to Conduct a Reasonable Reinvestigation and Correct the Employment Report**

69.    On June 6, 2023, Plaintiff received Defendant's correspondence confirming that it had reinvestigated Plaintiff's dispute and removed three of the disputed criminal records from the employment report about Plaintiff.  Notably, however, Defendant failed to remove the fourth disputed record, which was Case No. 2017GS3801950 – a felony drug conviction for possession of LSD.

70.    Of course, this remaining record was the only criminal record that Ocean Lakes directly told Plaintiff prevented them from removing his suspension.

71.    Defendant failed to issue a corrected employment report to Ocean Lakes that was accurate.

72.    Despite Plaintiff's dispute, Defendant failed to conduct a reasonable reinvestigation of Plaintiff's May 26, 2023 dispute and failed to delete all of the inaccurate disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

73.    Because Defendant failed to issue a corrected employment report that was accurate, Ocean Lakes did not reinstate Plaintiff's employment status and Plaintiff remains in limbo hoping the report will be corrected soon enough that Ocean Lakes will reinstate him.

74.    But for Defendant's inaccurate employment report, Plaintiff's employment with Ocean Lakes would have gone uninterrupted, and Plaintiff would have been spared the humiliation, embarrassment, and stress imposed upon Plaintiff to correct Defendant's erroneous reporting.

75.     Defendant's false report potentially cost Plaintiff a promising, well-paying, secure job with Ocean Lakes. Defendant's false report definitely cost Plaintiff lost wages.

76.     Plaintiff was previously self-employed but knew that in order to buy a house for his wife, new baby, and 15-year-old step-daughter, he would have to find a good-paying job with steady, full-time W-2 income.

77.     Plaintiff's mother is disabled and Plaintiff also wants to purchase a home so that she can move in with him and his family so they can take care of her.

78.     The position with Ocean Lakes was full-time and Plaintiff was set to earn $14.00 per hour with a competitive benefits package. More importantly, Plaintiff was very excited working as a Security Guard there because he was qualified to successfully perform the work and felt valued. Further, Plaintiff was particularly excited about the employment opportunity with Ocean Lakes because it suited his schedule and allowed him to earn steady reportable income that he was saving towards the purchase of a home.

79.     Shortly after Plaintiff started his employment, Ocean Lakes had selected him to be trained for special certification to handcuff and detain people. He felt valued by Ocean Lakes and was excited about his career opportunities as a security guard, especially at Ocean Lakes Campground.

80.     Plaintiff has still not been scheduled for any hours at Ocean Lakes since May 26, 2023, and was required to find alternate employment so he could pay the bills, not only to support his family living with him, but also his three children in college.

81.     Plaintiff is currently working at a GMC dealership as a car detailer, but desperately wants his job back at Ocean Lakes.

82.     Due to Defendant's unreasonable procedures and shoddy, if any, dispute reinvestigation, and despite Plaintiff's continued efforts to get his job back, Plaintiff's employment status at Ocean Lakes has not been reinstated.

83.     The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

84.     Plaintiff has a large and well-known family in South Carolina, and he is concerned about his and his family's reputation.

85.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, job security, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

**CLAIMS FOR RELIEF**
**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

86.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

87.     Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

88.     At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

89.     At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

90.     Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within the same.

91.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for

enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

92.     Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

93.     Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
## Failure to Perform a Reasonable Reinvestigation

94.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

95.     The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  *See* 15 U.S.C. § 1681i(a)(1).  The Act imposed a 30-day time limit for the completion of such an investigation.  *Id*.

96.     The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify

21

the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

97.     On at least one occasion during 2023, Plaintiff disputed the inaccurate information with Defendant and requested that Defendant correct and/or delete the inaccurate information in the employment report that is patently inaccurate, misleading, and highly damaging to him, namely, representing that Plaintiff had been convicted of four criminal records that belonged to another, including a felony drug related crime.

98.     In response to Plaintiff's dispute, Defendant failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in the employment report and refused to correct the employment report at issue in such a way to remove all of the criminal records that belonged to another.

99.     Defendant violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate; by failing to delete the disputed inaccurate information from the subject employment report; by failing to follow reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a public source it has reason to know is unreliable.

100.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the

future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

101.    Defendant willfully violated 15 U.S.C. § 1681i in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

102.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i.    Determining that Defendant negligently and/or willfully violated the FCRA;

ii.    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.    Granting further relief, in law or equity, as this Court may deem appropriate and

just.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: July 17, 2023

<div style="margin-left: 50%;">

*/s/ Dawn McCraw*
Dawn McCraw (SCB #105059)
CONSUMER ATTORNEYS
8245 N 85th Way
Scottsdale, AZ 85258
T: (602) 807-1527
F: (718) 715-1750
E: dmccraw@consumerattorneys.com
*Attorneys for Plaintiff*
*Quincy Green*

</div>